PEOPLE ex rel. FOSTER v. JUSTICE, City Comptroller.

(Supreme Court, Special Term, Erie County. March, 1913.)

1. MUNICIPAL CORPORATIONS (§ 1012*)—ALLOWANCE OF CLAIMS—ORDINANCES—EFFECT.

The common council of the city of Buffalo, prescribing, as authorized by the charter, as amended by Laws 1909, c. 120, a method for presenting and auditing bills against the city, may waive the requirements, and act independently thereof, and allow a valid claim.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2184; Dec. Dig. § 1012.*]

2. STATUTES (§ 66*)—GENERAL AND SPECIAL STATUTES.

The Legislature, in the absence of constitutional provisions, may pass special acts and confer special privileges by subsequent legislation.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 67, 68; Dec. Dig. § 66.*]

3. MUNICIPAL CORPORATIONS (§ 1012*)—AUDITING OF ACCOUNTS—CONCLUSIVENESS.

Ordinarily the action of common councils in auditing accounts is conclusive, in the absence of fraud or collusion.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2184; Dec. Dig. § 1012.*]

Mandamus by the People, on the relation of Charles B. Foster, as receiver, etc., against William G. Justice, Comptroller of the City of Buffalo. Writ granted.

Gordon F. Matthews, of Buffalo, for relator.

W. S. Rann, of Buffalo, for defendant.

WHEELER, J. The relator prays for a writ of mandamus compelling the defendant to deliver to him a warrant ordered drawn for his benefit by the common council of the city of Buffalo.

The papers disclose the relator had a contract with the city for the doing of certain work in the erection of the J. N. Adams Memorial Hospital, at an agreed price of $5,816. The petition alleges that said work has been fully performed by him. This allegation is not specifically denied by the defendant. It appears, however, that on November 26, 1912, he caused a duly verified claim for the sum of $5,816, the contract price, to be presented to the common council of the city, and demanded payment. The matter was referred to the committee on claims of said body. It investigated the claim, and, after a public hearing, reported in favor of the relator that a warrant for $2,816 should be drawn against the fund available for such use and purposes. The report was adopted and the warrant ordered drawn. The reso-

lution received the approval of the mayor of the city, and a warrant for that amount was in fact drawn and signed, and is now in the comptroller's hands ready for delivery. The balance of said claim, to wit, $3,000, is contested by the city, upon the ground that the same should be applied to a part of the heating contract, and as payment thereon, and was reserved subject to a further inquiry and investigation.

[1] So far as the common council of the city is concerned, by its action it has admitted the city's indebtedness to the relator in the sum of $2,816 for work done on the plumbing contract, as distinguished from that part of the contract relating to the heating to be installed under the agreement. The comptroller has refused to deliver the warrant in question, claiming in substance that the common council had no authority to order the warrant drawn before such claim had been presented to the department of public works and passed on by the city auditor, as provided for by certain city ordinances adopted and passed by the common council of the city of Buffalo, a course of procedure which it is claimed was not followed in this matter. These ordinances were adopted pursuant to the authority contained in chapter 120 of the Laws of 1909, amending the charter of the city of Buffalo. By this amendment, the common council is authorized, among other things:

"To prescribe methods of auditing and paying any and every indebtedness, and any and every claim against the city."

The question really presented is whether the common council may waive these requirements in its own behalf. The method prescribed by the ordinances of presenting and auditing bills is really for its own guidance and protection in ordering the payment of bills and claims against the city, and to the end that it may act intelligently and advisedly. May it not, in proper cases, act independently? Suppose an audit or allowance has been refused by the department in charge of the work done; would the common council, if convinced that the audit was improperly refused, be precluded by that fact from, notwithstanding, ordering its allowance and payment? We think it would not. The audit is for their guidance and information, and the ordinances prescribing the method of presentation were not designed to deprive the common council of the power to act, or to waive the strict requirements of the method or manner of presentation.

[2] A state Legislature may pass general laws governing a particular subject, but in the absence of constitutional prohibition may, nevertheless, pass special acts and confer special privileges by subsequent legislation. So may the legislative department of a municipal corporation do the same. In the case of Budd v. Camden Horse Railroad Company, 61 N. J. Eq. 543, 48 Atl. 1028, affirmed in 63 N. J. Eq. 804, 52 Atl. 1130, a municipal corporation passed a general ordinance relating to the manner of laying certain railway tracks. Later it passed a special resolution relating to the laying of tracks of the defendant in a certain street, which varied from the terms of the general ordinance, and it was claimed the special resolution was void, as in conflict with the general ordinance, but the court held that general legislation must give way to the special legislation.

In this particular matter now before the court, there is no claim that the relator has not fully performed his contract for the plumbing work for which payment is provided. The affidavits read on the part of the defendant show that the inspector of the public works department had, in fact, inspected the work. The affidavit of the inspector who looked over the work done states he cannot certify all work has been done in accordance with the rules of the department, because a certain iron pipe had been covered by earth, and until uncovered he was unable to certify that the joints had been made sufficiently tight to comply with the contract. It is the fair inference that the other plumbing work was in fact satisfactory. It is now admitted, however, that this iron pipe was not part of the relator's contract, but was covered by the contract of another person. So no good or real reason is presented why the contractor should not have his pay. The only subject raised is that certain formalities have not been observed.

[3] Ordinarily the action of boards of supervisors and of common councils, in auditing accounts or demands, are deemed final and conclusive, in the absence of fraud or collusion. Weston v. Syracuse, 158 N. Y. 287, 53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472; Osterhoudt v. Rigney, 98 N. Y. 222.

We are of the opinion the writ prayed for should be granted.