### DICKINSON, Plaintiff v. HOT MIXED BITUMINOUS INDUSTRY OF OHIO et, Defendants.

Ohio Appeals, Second District, Franklin County.

No. 3527. Decided July 21, 1943.

James I. Boulger, Columbus, for Citizens' Tax League of Ohio, appellee.

Thomas J. Herbert, attorney general, Columbus; E. G. Schuessler, chief counsel, Columbus; David M. Spriggs, asst. atty. gen'l., Columbus, for State of Ohio, appellant.

## OPINION

BY THE COURT:

The above-entitled cause is now being determined as an error proceeding by reason of four separate appeals on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

The several appeals grow out of a single lawsuit, but are separate and distinct on the questions raised. We will consider and determine the appeals separately and make explanations on the questions involved as we take them up.

The first appeal to be considered is that of the State of Ohio from the judgment of the Court of Common Pleas awarding to the Citizens' Tax League of Ohio the sum of $1176.44, payable out of a designated fund and to cover expenses found to be essentially helpful in the prosecution of a taxpayers' suit brought by plaintiff. It was from the allowance of this claim that the State of Ohio prosecutes this appeal.

On March 15, 1938, Agnes B. Dickinson, as a taxpayer, commenced an action in the Common Pleas Court of Franklin County, Ohio, seeking to recover for the State of Ohio from certain defendant road contractors and officers of the Highway Department a large sum of money on account of an alleged conspiracy on the part of said contractors and highway officials, which it was claimed resulted in stifling competition with respect to certain road materials that had been furnished the State of Ohio.

Various amended petitions were filed and thereafter the present Attorney General intervened in the case, and after protracted negotiations the case was settled by defendants, not including highway officials, agreeing to pay into court the sum of $80,000.00 and costs.

Thereafter, and before the fund was paid over to the State, the Citizens' Tax League filed what is denominated an application for allowance of expenses, which contained two claims.

Claim No. 1 was allowed in full in the sum of $1166.44, and was for certain expenses paid by the Citizens' Tax League, which the Court found to be of assistance in prosecuting the action and effecting settlement.

The list of such expenses is attached to the application of the Citizens' Tax League, marked Exhibit A, and made a part thereof. An examination of Exhibit A shows that such expenses were incurred for stenographic services, photostatic work, postage, telephone calls, telegrams and traveling expenses of plaintiff's counsel.

No bill of exceptions is presented. The State relies wholly upon the legal question that since the Citizens' Tax League was not a party to the action, no allowance should be made to reimburse for advanced expenses.

In support of this principle of law, the Attorney General on behalf of the State, cites 20 C. J. S., 352, §107. This section

is very short, containing but three lines. The heading given by the text writer is as follows:

"Costs cannot ordinarily be awarded to persons who are not parties."

The body of the section reads as follows:

"In the absence of some special statutory provision costs cannot be awarded to persons not parties to the litigation."

The case referred to in the note as sustaining the text is that of Eskind v Harvey (Georgia), 93 S. E., 39. Under the same note reference is made to In re Knowles, 23 N. H., 193, 197.

In this New Hampshire case, the Court finds the reason for the rule to be that a party cannot have the privilege of taking costs without having placed themselves in a position to be liable for their payment in case of failure to succeed.

The only other citation of authority made by the Attorney General is 7 C. J. S., 1083, from which the following quotation is taken:

"Other facts that may be considered include the cost of the attorney's reasonable traveling expenses, * * * the expenses incurred in following the case from court to court, the overhead expenses of the attorney in maintaining his office * * *."

The citation from 7 C. J. S., supra, is really not responsive to the question presented in the instant case, nor does counsel so claim, except to urge that the items enumerated in Exhibit A of the application are such as might be considered in determining the value of the services rendered by plaintiff's counsel.

We venture the guess that the claim of the Tax League might have been presented through the plaintiff, except for the fact that she had become involved in very serious difficulty through claimed misappropriation of funds held by her as a fiduciary, and in an effort to reimburse the fund she had made an assignment of all fees that might be allowed to her in the instant case. In addition to being a party plaintiff she was also listed as attorney, which she had a right to do since she was at that time a regularly admitted lawyer. The Court allowed her a fee of $4000.00, which under her assignment was paid to her bondsmen to recoup them for loss through her fiduciary defalcation.

This seems to be a proper place to make reference to claim No. 2.

This claim was for money advanced to plaintiff in the preparation of the lawsuit.

The Tax League and its counsel recognize the priority of the Bonding Company's claim to the fund under this assignment, and hence no question is raised at the present time under what has been designated as Claim No. 2.

Counsel for the Tax League urge the correctness of the trial Court's decision. While no direct authority is cited, yet they urge upon general principles that analogy of reasoning demands the dismissal of the State's appeal.

Counsel recognize the rule that generally allowances for expenses as costs may not be made to a person not a party to the suit. It is argued that the Tax League was in fact a party to the suit, although necessarily brought by the plaintiff as a taxpayer in her representative capacity. It is claimed that the Tax League actually participated in all stages of the litigation, including the final settlement, and, further, that their participation was such that in the event the case had been lost, the plaintiff could have recovered from it any costs adjudged against her.

In support of the claimed fundamental principle, it is pointed out that the Tax League was made up of taxpayers whose aim and object was the prevention of unauthorized and illegal withdrawing of tax money from the state treasury and other subdivisions; that thereby they are interested parties and belong to the group which plaintiff represented.

It is probably true that a taxpayer not actively participating in the litigation would not be held for expenses and costs in a taxpayers' suit, even though such taxpayer would be greatly benefited the same as all other taxpayers in the event of recovery. However, the Tax League stands in the position of actively participating and by virtue thereof the reason for the rule announced in the New Hampshire case (20 C. J. S., 352, note) would not apply.

This principle is announced in a decision by Bigger, J., Court of Common Pleas of Franklin County, 2 N. P. (N. S.), 314, **Britton v. Baker et.** The opinon in this case was affirmed by the Supreme Court without report in **73 Oh St, 401, 402.** The second syllabus reads as follows:

"Costs in such a suit, where the final judgment is against the plaintiff, are properly taxed against him, but upon a prop-

er showing he may without doubt require those whom he represented to contribute ratably toward payment of the costs."

The authority for a taxpayer's suit is found under §11257 GC. This section authorizes one person to sue on behalf of all persons interested in the question of common or general interest of any persons, or when it is impracticable to join them all.

We are also referred to Pomeroy's Code Pleading, (5th Ed.), page 446.

The following quotation is taken from counsel's brief:

"If * * * the purpose of the claimant who belongs to the class of persons represented, be to take a practical part in the controversy, or to share the benefit * * * this mere act of making the claim, coupled with a willingness to bear his share of the expenses will be a sufficiently positive and affirmative act to make him a party to the proceeding and entitle him to his personal relief."

We are also referred to and have examined the following:

Pomeroy Code Pleading, page 448;
47 Corpus Juris, 51, 52;
In Com. v. Scott, 55 L. R. A., 597;
Whitney v. Elmira Ind. Assn., 61 N. Y. Supp., 27;
Atkins v Trowbridge, 147 N. Y. Supp., 257;
**Kinney v. Pocock, 8 N. P. (N. S.), 121.**

The case of **Bedford v. State, ex rel., 123 Oh St, 413,** is cited and relied upon to a large extent.

In this case the Court, in the syllabus, makes the pronouncement that while an action by a taxpayer is for money only, yet the suit possesses certain equitable characteristics and a trial court out of the fund so created in the exercise of equitable powers may allow a reasonable fee to the attorneys for the taxpayer, payable out of the fund so created. Pages 417 and 424 of the opinion will be found interesting.

We are also referred to the case of **State, ex rel. West, 61 Oh Ap, 389,** affirmed under the same title in **135 Oh St, 589.**

This case reiterates the principle announced in **123 Oh St, 413,** that an action of this character possesses certain equitable characteristics.

We have also examined the case of **Harbage v. Tracy, 64 Oh Ap, 151.** The opinion in this case was by our Court.

We have also examined the case of Reagan v. Babcock, 196 Minn., 243 (264 N. W. 893). This decision by a Minnesota Court also refers to the equitable characteristics of a taxpayers' suit and recognizes the right to allow plaintiff expenses.

Arriving at the conclusion, as we must, that the instant case presents certain equitable characteristics; that the Tax League was at all times closely connected with the prosecution and settlement of the action; and that their participation was of such a character as to render them liable to plaintiff for payment of the part of the costs in the event the litigation had been unsuccessful; that the Court found that the expenses incurred were necessary and beneficial to the action; we have no difficulty in arriving at the view that the trial court, acting as a chancellor, was within his right in allowing to the Tax League as intervenor, its expenses paid out in the prosecution of the litigation carried on to a successful termination.

The determination for the trial court as to this appeal will be affirmed and costs in our Court adjudged against the appellant.

The cause will be remanded for further proceedings according to law.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.

Pretzman & Dillon, Columbus, for appellee.

Thomas J. Herbert, attorney general, Columbus; E. G. Schuessler, Chief Counsel; David M. Spriggs, asst. atty. gen'l., Columbus, for State of Ohio, appellant.

The second appeal which we now take up is that of the State of Ohio from an order of the trial court allowing Pretzman & Dillon, attorneys, the sum of $53.33 to be paid from the fund in the hands of the Clerk of Courts. For historical facts we make reference to our opinion under the first appeal.

Pretzman & Dillon were attorneys for the plaintiff. After a settlement had been consummated, Pretzman & Dillon, as attorneys for plaintiff, filed an application for attorneys' fees and repayment to them of the sum of $53.33 for premium on an injunction bond.

The trial court in allowing attorney fees failed to consider the item of expense of $53.33. When this item was called to the Court's attention, the same was allowed as appears by a journalized entry. The Attorney General, as counsel for the State, urges that Pretzman & Dillon were guilty of laches in delaying to urge the present claim when their application for attorney fees was passed upon and that such later application should be denied because it was barred by the principle of res adjudicata. In support of the question of res adjudicata, is cited the case of **Quinn v. State, ex rel., 118 Oh St, 48.**

Counsel for Pretzman & Dillon argue that the appellant is laboring under a misapprehension of fact when it refers to a later application after the allowance of attorney fees. We are not sure that counsel for the State is laboring under the impression that a new original application was filed by appellees for this item after the allowance to them of attorney fees, or are arguing that when the Court passed upon the application it included every item included therein.

An examination of the application for attorney fees and the item of $53.33 will disclose that both were included in the one and only application.

The fact that the Court allowed this item supports appellee's claim that he overlooked the same in making the allowance for attorney fees. If counsel for the State intend to argue that appellee's calling the item to Court's attention after the allowance of attorney fees raises the issue of laches and res adjudicata, then we would hold against the appellants.

Considering the record in its entirety as it bears on this appeal, we hold against the appellants on their claim of laches and res adjudicata.

The remaining question is whether or not the premium paid on the bond may be allowed as an item of costs in the absence of a statute making specific provision therefor. It is conceded there is no such statute in Ohio.

There is not presented to us any bill of exceptions and hence the question is to be determined upon the original papers and the transcript of docket and journal entries.

It appears that when the action was originally filed a temporary injunction was prayed for, seeking to enjoin the Auditor of State from paying out any money due several of the Hot Mixed contractors, defendants, claimed to total the sum of $130,000.00. This temporary restraining order was issued after hearing. As a condition for the issuing of such re-

straining order the plaintiff was required to give bond in the sum of $4000.00. About a year later, upon the application of the defendants, the Court ordered an additional bond in the sum of $8000.00. A surety bond was given and the premium was $80.00, of which amount Allen I. Pretzman paid one-third, E. W. Dillon, one-third, and the plaintiff, one-third. It is urged by the appellees that this was a necessary expense, essential to the preservation of the available fund from which any judgment might be paid, and similarly to protect against the insolvency of some of the defendants.

So far as we are able to find, no Ohio courts have passed upon this question; at least, able counsel representing the parties have not been able to find any. The Attorney General in his brief cites 14 American Jurisprudence, page 36, §60, and quotes the following from the above section:

"The general rule seems to be that in the absence of statutory authority, the premium paid for a bond given in a pending action may not be taxed as costs therein."

Also in support of the above principle is cited 81 A. L. R., 1532, together with notes wherein are cited the decisions of various courts in other jurisdictions, including the United States Court.

Counsel for appellees analyze the same authorities and call attention that the courts in various jurisdictions are not uniform in their holdings, and specifically calls attention to the rule announced by the New York courts holding in substance that a premium paid on a bond would be allowed if the bond had been ordered by the Court. Greenbaum v. Berenson, 217 App. Div., 774 (New York); N. R. S. Railroad Corporation v. Foreman, 222 App. Div. 680 (N. Y.); (225 N. Y. Supp., 52).

We also find the following in American Jurisprudence, Vol. 14, page 36, §6, in the last paragraph thereof:

"In a number of Federal cases, either by rule of court or through usage, it has been held that a premium paid for a bond given in a judicial proceeding is an item to be taxed as part of the costs."

Again referring to 81 A. L. R., page 1532, under annotations, under the heading "Introductory", we find the paragraph holding in substance that it is a general rule that **courts of**

law may not allow costs except under some specific provision of statute. (Emphasis ours.)

Counsel for appellees argue that the instant action is one in equity and that it has been the custom and practice for a chancellor to allow expenses as an item of cost. State, ex rel. Yountz v. West, 135 Oh St 589; Bedford v. State, 123 Oh St 413.

While not free from doubt, we are inclined to the view that the better reasoning sustains the trial court in the allowance of the item as a necessary and essential expense. In so determining we consider that the action was one in chancery; that the bond was given by order of Court, as distinguished from a bond required by statute, and as heretofore stated the necessity of giving the bond in the interest of preserving the fund.

The appeal of the State will be dismissed and the judgment of the trial court affirmed. Costs in this court will be adjudged against the appellant.

Cause remanded for further proceedings according to law.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.

James I. Boulger, Columbus, for appellant, The American Surety Co.

Thomas J. Herbert, attorney general, Columbus; E. G. Schuessler, Chief Counsel, Columbus; David M. Spriggs, asst. atty. gen'l., Columbus, for appellee.

The third appeal which we now take up is that of The American Surety Company of New York from the judgment of the trial court denying its motion for leave to intervene and file its intervening petition, attached to said motion, in which it asserted its ownership and right to $2431.58, which was part of the funds in the hands of the Clerk of the Common Pleas Court.

Certain historical facts set out under the first appeal herein are pertinent to the present appeal. In addition, other facts referring exclusively to the subject matter of this appeal are set out. Of course, these facts appear from the proffered intervening petition since the Court denied the application to file.

The motion, together with the proffered intervening petition, was filed January 31, 1941. The settlement entry, payment into Court of $80,000.00 plus interest, in the sum of $1631.17, and the dismissal of the action was filed and journalized October 29, 1941.

According to the proffered intervening petition, the Cleveland Trinidad Paving Company, one of the defendants, prior to 1938 had been awarded a paving contract on the Mayfield Road in Cuyahoga County, being designated as Project No. 225. As one of the conditions for securing the contract, it was required to and did give a statutory bond with The American Surety Company as surety. The premium on said bond amounted to $2431.58. On October 20, 1938, the agent for the Bonding Company procured from the Paving Company an assignment and transfer of the above amount from retained percentage of 15% on the total amount due the Paving Company from the State of Ohio, on account of State Project No. 225, covering the paving of Mayfield Road, Cleveland Heights, Ohio. On December 7, 1939, the agent duly transferred said assignment to The American Surety Company, on whose behalf it was taken, and the Surety Company is now the owner and holder thereof.

On December 11, 1939, The American Surety Company of New York duly filed said assignment with the State Highway Department of the State of Ohio, stating in writing that it was filed for entry on the highway records in order "that your file will indicate that at the time this litigation is completed payment of the amount is to be made to The American Surety Company of New York". An early reply was requested.

To this the acting auditor of the Department, on December 12, 1939, replied that the assignments filed aggregated to within a few dollars of the maximum amount which might be due and payable "when, as and if the funds are released by the Common Pleas Court". The assignment was returned to intervenor with a letter advising that at this time payment to the Cleveland Trinidad Company had been enjoined.

It appears from the entire record that the injunction against the Auditor of State restraining the issuing of warrants on the amounts due the several defendants was issued on July 21, 1938, in the original action several months preceding the original assignment made to the agent of The American Surety Company.

On January 3, 1940, the intervenor again sent the assignment to the Department of Highways, stating in writing that the acting auditor had notified the Ryan Company's attorneys that the original assignment had been accepted, subject to future developments and the reassignment to intervenor should be accepted and filed with the original. Receipt of this

was acknowledged, stating that the reassignment would be filed without liability attaching to the department, its officials and agents.

On October 15, 1941, The American Surety Company, through its manager, directed a letter to the acting Auditor of the Department of Highways, Columbus, Ohio, the first paragraph of which identified the subject matter under the assignment and inquiring about the litigation through which the fund was tied up by the temporary restraining order, and further inquiring if any developments would make it possible to give a report on the status. On the following day the acting auditor replied, stating that there had been no decision in the case; that newspaper items indicated that conferences among counsel for plaintiff and defendant and representatives of the Attorney General had been held relative to the case; and that Mr. E. G. Schuessler, Chief Counsel in the Attorney General's office, "might be able to give some idea as to when the case will go to trial".

On October 17, 1941, the intervenor wrote to Mr. Schuessler, Chief Counsel to the Attorney General, requesting information about the case.

On October 28, 1941, Mr. Schuessler, Chief Counsel, answered the communication, in substance stating that in all probability a settlement would be effected within the next day or two, at which time the temporary injunction enjoining the payment of various amounts due certain of the defendants would be dissolved and warrants for payment of the money due such defendants would be released by the Auditor of State. Upon release of the warrants, the respective amounts due the State from the defendants would, by consent of the defendants, be retained by the State and the balance paid over to the defendants.

The entry of settlement was filed on October 29, 1941. As heretofore stated, this entry provided for the payment into court of $80,000.00 in full settlement of all claims asserted in said action and two other kindred suits.

A copy of this settlement entry is filed in connection with this appeal as an original paper. It is entirely too long to even copy its substance in this opinion. The entry did provide that the defendants, not including the officers of the Highway Department, would pay into court as full and complete settlement the sum of $80,000.00, and upon the payment of such amount the temporary restraining order issued against

the defendants would be dissolved and the State Auditor ordered to issue his warrant on the State Treasurer for the specified amount due the several defendants, which totalled something near $130,000.00, included in which was one for $5810.58 issued to the Cleveland Trinidad Paving Company.

Complaint is made that the intervenor was not made a party to said cause; received no notice that the fund belonging to it by virtue of its assignment was the subject matter of litigation; no service of process was made upon it; the restraining order preventing the distribution of said warrant was dissolved and thereupon the State of Ohio paid the Cleveland Trinidad Paving Company said sum of $5810.58, of which $2431.58 belonged to this intervenor and said company paid said sum to the Clerk of Courts, by whom it is now held, although in fact in law it belongs to the intervenor.

The intervenor further complains that it was misled by the foregoing letters of the State Department into the belief that it would at least receive knowledge of the progress of said action in time to enable it to protect its rights, which by lack of such knowledge it was unable to do, by filing an application to be made a party to assert its claim and ownership of said sum in the sum of $2431.58, before the aforesaid entry of October 29, 1941, was filed.

Intervenor further complains that the Chief Counsel in the Attorney General's office delayed answering intervenor's letter so that when the answer was received the settlement had been completed.

At this point we might say that the intervenor did know that the fund in question was held up by injunction. There is nothing in the record to advise that the trial court at the time of approving the settlement entry had any knowledge of intervenor's claim by way of assignment. Neither is there any showing made that the plaintiff had any knowledge of intervenor's claim, unless the correspondence between the intervenor and Mr. Schuessler, as Chief Counsel of the Attorney General's office, could be considered as such notice. The intervenor's letter of October 17, 1941, so far as the proffered intervening petition discloses, merely requested information about the case, without advising the reason for the inquiry. The answer written and mailed by Mr. Schuessler, Chief Counsel, was very full and complete as to the status of the Hot Mixed case at that time.

The chief complaint is that Mr. Schuessler delayed answering and through such delay the intervenor did not have an opportunity of filing an intervening petition before the settlement was consummated and warrants issued to the Cleveland Trinidad Paving Company and others.

Under the law we are unable to determine that the Chief Counsel in the Attorney General's office was obligated to answer intervenor's letter at all, but merely as a matter of courtesy it would be expected. The ten days intervening between the letter of inquiry and the answer would hardly be held an unreasonable time, even if there was a legal duty. Under this allegation, even if uncontradicted, it could not be said as a matter of law, that there was a design and purpose to delay answering the letter so that intervenor would be prevented from filing his intervening petition. From the admitted facts within the knowledge of intervenor there is no reason why it might not have filed its intervening petition before the settlement entry.

It should also be borne in mind that the Attorney General assumed the position of a plaintiff by filing an intervening petition against all the defendants, in the first paragraph of his petition, stating:

"Your relator further saying that he filed this intervening petition on his relation as Attorney General."

John J. Jaster, Jr., at all times mentioned in the petition was the duly appointed, qualified and acting Director of Highways for the State of Ohio, and had the Attorney General been convinced that the taxpayers' suit was improperly brought he might have acted for and on behalf of the defendant, Jaster, Jr.

Any state official ordinarily may call upon the Attorney General to represent him and the Attorney General will so do, when in the exercise of his discretion he determines that right and justice are with the official. However, the Attorney General is authorized under the statute to bring an action against a state official solely on his official relation whenever it is determined that the official was acting wrongfully in the administration of his office, and particularly where such claim of wrongful administration is the means of diverting funds from the state treasury.

In the intervening petition the Attorney General alleged substantially the same state of facts as are contained in the petition of the taxpayers, and, among other things, charges a conspiracy between the Hot Mixed Bituminous Industries of Ohio, including its constituting members and the Highway Commission of Ohio, its officers and employees, to defraud the State of Ohio and the taxpayers and citizens thereof of large sums of money involved in highway construction and maintenance projects, through which the prices for certain material were far in excess of what was charged for the same material on other projects in the same localities and under similar conditions.

The notice of the assignment which the proffered intervening petition says was given to the Highway Department would be in fact a notice to what was alleged to be a co-conspirator. At this point we might state that the intervening petition alleges that the Cleveland Trinidad Paving Company was insolvent and since action may not be brought against the State of Ohio, the intervenor has no remedy unless granted under the present proceedings.

We have arrived at the conclusion that the present appeal may be determined on the following lines of reasoning:

First, we can safely start with the proposition that the Court had the right to journalize the settlement entry, unless knowledge of intervenor's claimed assignment was brought home to the Court by some party to the suit whose duty it was to speak.

In other words, one person owing another may safely pay the debt to the second party without making any inquiry as to whether or not the claim has been assigned. Furthermore, if assigned, knowledge must be brought home to the payer, otherwise he is within his rights in paying the original obligee.

Considering the factual situation as set out in the proffered intervening petition, we find nothing whatever claiming that the trial court had any knowledge of the assigned claim. Neither is any claim made that the taxpayers' plaintiff had any knowledge, and we find this is equally true as to the intervening Attorney General, even though the intervenor did write a letter to the Chief Counsel of the Attorney General asking about the status of the litigation.

We have heretofore referred to this, but at this time state that the letter failed to advise the purpose of the inquiry.

None of the officials of the State of Ohio had any knowl-

edge of such claim, except the defendant Jaster, as Director of Highways.

As heretofore stated, Jaster was a defendant jointly charged with conspiracy.

Any notice given by the intervenor to the Highway Department would not make the assigned claim superior to that of the State of Ohio.

In considering this particular appeal, we have to determine the question on the factual situation set out in the proffered intervening petition.

The Attorney General in his brief denies certain allegations of the petition and in support of the claim makes reference to the journalized settlement entry which is filed in the transcript of docket and journal entries.

It is quite true that the journal entry contains a finding of the court that the defendant contractors have, pursuant to said agreement of settlement, paid to the Clerk of this Court the sum of $80,000.00. Thereafter, follows the action of the Court dismissing the suit with prejudice, ordering the injunction dissolved and the defendant, Joseph T. Ferguson, as Auditor of State, to deliver over to certain named defendants, money, of which $5810.58 is to be given to the Cleveland Trinidad Paving Company. Nowhere in the entry is there any statement remotely indicating that the defendants are to receive from the State Auditor the balance due them and then pay the same or any part thereof to the Clerk of Courts in furtherance of the settlement. However, the proffered intervening petition so avers and we decide the case in the light of that averment since no evidence was or could be introduced.

The Attorney General in his brief argues that the principle of pendente lite is sufficient to sustain the action of the trial court. In raising this principle of pendente lite it was recited that the service of summons on the Cleveland Trinidad Paving Company, and the demurrer and restraining order were prior to the claimed assignment made by the Cleveland Trinidad Paving Company to the intervenor. The taxpayers' suit, as well as the intervening petition of the Attorney General, in the prayer thereof, among other things, asks that each and every defendant be enjoined from destroying, secreting, hiding, transferring or delivering to any other person any and all books, records, **vouchers**, documents, papers, letters, and so forth. (The emphasis is ours.)

Under the subject of lis pendens we are referred to the following:

**Section 11300, Ohio General Code;**
25 **Ohio Jurisprudence,** 658;
25 **Ohio Jurisprudence,** 653;
38 Corpus Juris, 50.

While not free from doubt, we are inclined to the view that the principle of lis pendens is applicable.

We find no error in this appeal and the judgment of the trial court will be affirmed, with judgment against appellant for costs made in our Court..

Cause remanded for further proceedings according to law.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.

Hugh Bennett, Columbus, for Seaboard Surety Company.

Thomas J. Herbert, attorney general, Columbus; E. G. Schuessler, Chief Counsel, Columbus; David M. Spriggs, asst. atty. gen'l., Columbus, for appellee.

The fourth appeal which we now take up is that of the Seaboard Surety Company and others from the judgment of the trial court denying its motion for leave to intervene and file its intervening petition, attached to said motion, in which it asserted its ownership and right to $554.02, with interest, which is part of the funds in the hands of the Clerk of the Common Pleas Court.

Certain historical facts set out in the first appeal herein are pertinent to the present appeal, and in addition, the third appeal has many points of similarity to this appeal.

On July 28, 1942, the Seaboard Surety Company filed motion with the trial court asking that it be granted leave to file instanter its intervening petition, a verified copy of which is attached to the motion marked Exhibit A. The trial court denied the application to intervene upon the statements contained in the application and in the intervening petition and thereafter appeal on questions of law was prosecuted to our Court.

The sole question for determination is whether under the

allegations of the proffered intervening petition the trial court was in error in denying said application.

The Seaboard Surety Company executed a statutory bond on behalf of the Cleveland Trinidad Paving Company following the letting of contract for building Mayfield Road, Cuyahoga County, Ohio, known as Project No. 225. At the time of executing the bond the Cleveland Trinidad Paving Company assigned to the Surety Company its interest in the contract as collateral security in the event the Surety Company might be called upon to pay under the terms of the bond. Copies of this assignment were filed with the State Department of Highways, the Treasurer of State and the Auditor of State, each copy having the same force and effect as the original.

The defendant did default, and the intervenor was required to pay out sums of money from time to time for paving material bills and for labor, etc. Said intervenor was reimbursed for part of said expenditures by the Paving Company so that at this time there remains an unpaid balance due and owing in the sum of $554.02. The Cleveland Trinidad Paving Company being unable to pay said balance, executed under date of November 1, 1939, an assignment in favor of the Seaboard Surety Company in the sum of $1500.00.

It is further alleged in the intervening petition that on November 6, 1939, the intervenor filed copies of the above assignment with the State Department of Highways and also the Treasurer of State and Auditor of State. Also that the Department of Highways of the State of Ohio accepted the above assignment.

The proffered intervening petition of the Seaboard Surety Company differs from that of The American Surety Company in that the present intervening petition contains no allegations of any communications between the Seaboard Surety Company and any of the departments of the State. The petition contains nothing from which can be inferred a direct admission that it knew of the pending litigation instituted by Agnes B. Dickinson, a taxpayer. Neither is there any allegation that the intervenor did not have notice of the pending action, and this would be essential under some features of the case.

It is alleged in the proffered intervening petition that the intervenor had no knowledge and no notice that a settlement was being negotiated. It is alleged that in violation of the

rights of the intervenor the said funds were paid over by the State of Ohio to the Cleveland Trinidad Paving Company and accepted by the latter, and it in turn paid said funds into the hands of the Clerk of Courts, who now holds same.

It clearly appears from the proffered intervening petition that the claimed assignments were made after the granting of the temporary restraining order through which the State Auditor was enjoined from paying any funds in his hands belonging to the several defendants. The petition also alleges the insolvency of the Paving Company, the inability to sue the State of Ohio and the dependence upon the present form of action.

The following paragraph in the proffered intervening petion gives us some concern:

"This intervenor has made due and proper demands upon the Paving Company to recover the amount of the retained percentage of said contract assigned as aforesaid by said Paving Company to this intervenor, but said Paving Company has failed to prosecute any action to recover said money with diligence in violation of its obligation imposed upon it by its said assignment."

This might indicate that under the terms of the assignment the Paving Company was obligated to recover the amount of the retained percentages.

If this be correct, the Paving Company did recover the amount of retained percentages, just as the petition says it was obligated to do. Under this situation the real complaint would be that while the Paving Company recovered, it failed to distribute to the assignee.

In considering the appeal of The American Surety Company of New York we discussed the question and cited some authorities relative to the issue of pendente lite. What was said in that part of the opinion will apply here.

Finding no prejudicial error, the judgment of the trial court will be affirmed and costs in our Court adjudged against the appellant.

Cause remanded for further proceedings according to law.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.