**NEW JERSEY LIFE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**James A. GETZ et al., Defendants-Appellees.**

**Ruth GETZ, Plaintiff-Appellee,**

v.

**NATIONAL FIDELITY LIFE INSURANCE COMPANY, Defendant-Appellant.**

Nos. 77–3597, 77–3598.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 29, 1980.

Decided and Filed June 4, 1980.

Rehearing Denied July 23, 1980.

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, for plaintiff-appellant in case no. 77–3597 and defendant-appellant in case no. 77–3598.

Leo J. Breslin, Lindhorst & Dreidame, Marc D. Mezibov, Cincinnati, Ohio, for Getz.

Before MERRITT and JONES, Circuit Judges and WISEMAN, District Judge.*

MERRITT, Circuit Judge.

In this diversity case from Ohio summary judgment for $100,000 was granted in favor of Ruth Getz, the beneficiary of two life insurance policies on her husband, Jack A. Getz. The trial court held trecover $50,000 each from New Jersey Life Insurance Company and National Fidelity Life Insurance Company. The insurance companies appeal.

---

* The Honorable Thomas A. Wiseman, District Judge for the United States District Court for the Middle District of Tennessee, sitting by designation.

1. Section 3911.22:

**199**

Initially, New Jersey Life brought suit against the beneficiary seeking declaratory and injunctive relief. The beneficiary then filed a claim against National Fidelity to recover on her husband's policy. The suits were consolidated by the trial court.

The insurance companies allege that the policies are void because of the "good health" clause in each policy requiring the insured to be in good health at the time of delivery of the policy. Because Jack Getz had cancer when he signed the applications, the companies argue that the contracts of insurance are not binding. In the alternative, the companies allege fraud because Getz knew he had cancer when he signed the applications and he thus misrepresented the true condition of his health.

In granting the beneficiary's motion for summary judgment the trial court found that the insurance agents involved "solicited" within the meaning of Ohio Rev.Code Ann. § 3911.22 [1] and, therefore, were agents for the insurance companies. The Court held that the companies had knowledge through their agents that the insured had cancer and, in essence, waived the good health clause. The Court further held that there was no evidence of fraud on the part of the insured. We reverse the summary judgment and remand for trial.

I.

In 1973 the Getz Jewelry Company attempted to establish a pension plan for its employees. The pension plan called for $183,000 of insurance on the company's president, Jack Getz. Sherrill Morgan and Jack McDonald, who were employed by the William T. Earls Brokerage Agency, advised Getz and his attorney, Reuven Katz, in the establishment of the plan. Morgan had been the insurance representative for Getz since 1969.

> Any person who solicits an application for insurance upon the life of another person shall, in any controversy between the insured or his beneficiary and the company issuing a policy upon such application, be considered the agent of the company and not the agent of the insured.

Getz, 72, had a heart problem and was classified as a substandard risk. Because of the difficulty in obtaining life insurance for him, McDonald and Morgan contacted Keith Brougher, a specialist in substandard risks and a general agent for several companies. During the week of December 3–7, 1973, Brougher obtained oral agreements from three companies to insure Getz for $50,000 each [2]—New Jersey Life, National Fidelity and General United.[3]

On December 7, 1973, McDonald and Morgan sent the insured to Dr. Samuel Rockwern for a medical examination. Getz completed a medical inventory form at the doctor's office which Dr. Rockwern later signed. After the examination, Getz was sent to the lab for a chest X-ray. The results, which were telephoned to Rockwern that afternoon, indicated bronchogenic carcinoma (lung cancer). Dr. Rockwern telephoned the results to McDonald that same day.

On December 8 McDonald and Morgan obtained the X-ray and written report. Dr. Rockwern suggested that they contact Getz and advise him to see his family physician immediately. Two days later, on December 10, Morgan and McDonald met with Getz. They did not inform him that he might have cancer. They simply told him to see his family doctor as soon as possible. Sometime between December 10 and December 15 (the record is unclear on the exact date), Getz apparently saw another doctor. On December 13 Getz completed the two insurance applications.

McDonald telephoned Brougher on December 10 concerning Getz' condition but there is a dispute as to what McDonald actually told Brougher. McDonald testified that he telephoned Brougher again on the 13th to discuss Getz' condition. Morgan delivered the premium checks and the applications to Brougher on December 15. At that time he informed Brougher that Getz had been to another doctor and had entered the hospital for tests.

New Jersey issued its policy under date of December 26 and the National Fidelity policy was dated on December 13. It is not evident from the record when Getz actually received his policies from the insurance companies. McDonald, Morgan and Brougher had a single case agreement with both companies whereby they received commissions on the Getz policies.

## II.

■ Rule 56 of the Federal Rules of Civil Procedure provides for the disposition of civil actions by summary judgment. In ruling on a motion for summary judgment the trial court must view the evidence in the light most favorable to the party opposing the motion. On review this Court must do the same. We cannot decide a question of fact but must determine whether a "material" question of fact exists. If we consider the facts as they would be most favorable to the insurance companies, we must conclude that a substantial question exists as to whether there was fraud on the part of the insured.

■ According to the allegations of the insurance companies, Getz was aware that he might have lung cancer at the time he completed and while the companies were considering his applications for insurance. Yet, he did not make that disclosure on his application or subsequently. Under Ohio law the insured cannot recover if he intentionally fails to disclose or falsely represents the condition of his health. *John Hancock Mut. Life Ins. Co. v. Luzio*, 176 N.E. 446, 123 Ohio St. 616 (1931).

■ The trial court stated in its order granting summary judgment that there was no evidence of "wrongdoing or misrepresentation" on behalf of the insured and that McDonald and Morgan both testified that Getz "never concealed anything from them." On the contrary, we conclude that their testimony creates a genuine issue of

---

**2.** Mutual Benefit Life Insurance Co. supplied the remaining coverage for $33,000.

**3.** General United was involved in a suit in the state court which resulted in a summary judgment for the beneficiary.

material fact of whether or not Getz knew that he had cancer but concealed it knowingly at the time he completed and submitted the applications for insurance.[4]

The beneficiary not only strongly controverts any misrepresentation on the part of the insured, she also contends, in the alternative, that her husband made full disclosure of his bad health to the agents and that the knowledge of the agents is imputed to the company. This is no defense, however, where there is collusion in the fraud between the insured and the agents. If the insured colluded with the agents to deceive the principal, the insurance transaction between him and the agents is illegal and the principal is not liable. Restatement (2d.) Agency § 180a (1958). Ohio recognizes this principle. See *Dickinson v. Hot Mixed Bituminous Industry of Ohio*, 58 N.E.2d 78, 41 Ohio Abs. 269 (1943). The question of fraud and collusion between McDonald, Morgan, Brougher and Getz is a factual issue that can be determined only by trial.

The insurance companies rely heavily on the good health clause in the policies which bars recovery if the insured is not in good health when the policy was issued. The trial court found that the companies had waived the good health clause because they had knowledge of Getz' condition through their agents. We believe that the waiver rule only applies in the absence of fraud and that the waiver issue under the good health clause is therefore the same as the fraud issue discussed above. Fraud by the insured or fraudulent collusion with the agents would be a complete defense, and would bar a waiver under the good health clause.

In granting the beneficiary's motion the court held that McDonald and Morgan were agents for the insurer under Ohio Rev.Code Ann. § 3911.22. We agree with that proposition. We do not agree, however, that there is no issue of fact concerning fraud. McDonald and Morgan, acting pursuant to a single case agreement with the insurance companies, are "agents" of the insurance companies within the meaning of Ohio Rev.Code Ann. § 3911.22. *Central Ohio Ins. Co. v. Lake Erie Provision Co.*, 13 Ohio C.C. 661, 7 Ohio C.D. 563 (1897) (interpreting Ohio Rev.Stat. § 3644, predecessor to Ohio Rev.Code Ann. § 3911.22). They performed the normal functions of agents, such as submitting the life insurance applications, receiving delivery of the policies, collecting the premium payments, and giving conditional receipts. The insurance companies paid commissions directly to them. These facts are undisputed. Therefore, the agency relationship between McDonald and Morgan and the insurance companies arises as a matter of Ohio law.

Accordingly, the summary judgment of the District Court is reversed and the case is remanded for trial.

4. Deposition of Jack McDonald:
   Q. At no time, to your knowledge then or in retrospect, did Mr. Getz ever conceal anything from you about his medical condition or what he was doing about it, did he?
   A. Not that I know of.
        *     *     *     *     *     *
   Q. Well, you knew that he was in the Hospital on the 15th?
   A. Yes, I knew he was in the hospital.
   Q. You got that information from Mr. Getz?
   A. Yes.
   Q. You knew that he had seen Dr. Gottesman?
   A. Yes, I did.

   Q. You got that information from Mr. Getz?
   A. Yes, I did. (pp. 27, 28)
   Deposition of Sherrill Morgan:
   Q. Now, in all your dealings with Mr. Getz, as far as you were concerned, he was candid with you and responded accurately to any inquiries that you made?
   A. Yes.
   Q. As far as you know, he didn't try to conceal anything?
   A. That's correct.
   Q. He didn't try to misrepresent anything? (pp. 16, 17)