708 F.2d 723
 31 Fair Empl.Prac.Cas. 1520,
30 Empl. Prac. Dec. P 33,248
Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
V.W. Freeze at al., Plaintiffs-Appellants
v.
ARO, Incorporated et al., Defendants-Appellees.
 Docket No. 81-5024.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1982.
 
 Before KEITH and JONES, Circuit Judges, and WEICK, Senior Circuit Judge.
 
 PER CURIAM
 
 1
 Plaintiffs-appellants V.W. Freeze, a white male employed at Arnold Air Force Station in Tullahoma, Tennessee, and Local Union 46, International Guards Union of America, collective bargaining agents for the guards employed at the air force station, filed this action on May 14, 1979 challenging remedial action taken by ARO pursuant to a contractual obligation under Executive Order No. 11246.
 
 
 2
 An earlier appeal to this Court on February 10, 1982 resulted in a remand for joinder of Pan American as the appropriate party in the event a determination was made that Pan American became the successor under the agreement. On the remand, Pan American was joined and admitted that it was the successor to the agreement, thus obviating any need for hearing or deciding that issue. The Court then granted summary judgment to Pan American. The present appeal raises the same issues as the first appeal. The contractor shall be referred to as ARO even though Pan American is its successor. We affirm the grant of the motion for summary judgment.
 
 
 3
 The essence of the complaint is that by permitting B.D. Taylor, a black male employee, to retain his date of hire seniority upon transferring units, the defendants violated Title VII of the Civil Rights Act.
 
 
 4
 ARO operates a testing facility for the United States Air Force at Arnold Air Force Station. ARO is now, and has been since 1950, a government contractor subject to the nondiscrimination provisions of the relevant executive orders. Thus, each of the contracts awarded to ARO by the Air Force since 1961 has incorporated the equal opportunity provisions of Executive Order 10925 (contracts awarded through October 1965) or Executive Order 11246, as amended (contracts awarded subsequent to October 1965).
 
 
 5
 In March 1970, the Agency for International Development of the Department of State (AID), the contract compliance agency for engineering firms, conducted a preaward compliance review for a contract scheduled to be awarded to ARO by the Air Force on July 1, 1970. Based upon this compliance review, AID concluded that ARO had engaged in a pattern of employment discrimination by, inter alia, assigning black employees on the basis of their race to certain less desirable jobs. This conclusion was based on the following facts. In February 1970, ARO employed 3,528 persons, of whom 129 were black. Of these 129 black employees, 81 (62.8 percent) were assigned as either janitor-cleaners or laborers, unskilled positions which were occupied by only four percent of ARO's workforce. In fact, out of 51 janitor-cleaners only one was white, and out of 87 laborers, 31 (35.6 percent) were black. At the same time, only one of 48 guards employed by ARO was black. As a result of this racial concentration in the janitor-cleaner classification, it became known in the company as a "Black Island." As of August 12, 1963, no blacks had been hired into any job other than janitor-cleaner or laborer.
 
 
 6
 On June 27, 1970, ARO, AID, and the Office of Federal Contract Compliance (OFCC) entered into a Conciliation Agreement (hereinafter "the 1970 Conciliation Agreement") which provided, in pertinent part, that black employees hired prior to the date of the agreement into the janitor-cleaner or laborer classifications would be permitted to transfer to positions for which they were qualified in other seniority units. These transfers would be on the basis of, and would allow retention of, their plant-wide seniority dates. The agreement also committed ARO to seek to negotiate the necessary changes in its collective bargaining agreements with the unions representing its employees.
 
 
 7
 The negotiations contemplated by the 1970 compliance agreement did not take place with Local 46 until the regular 1978 scheduled negotiations on a new basic labor agreement. In the collective bargaining agreement effective May 31, 1978, ARO successfully negotiated a change in the "Equal Employment Opportunity" provision (Article II, Section 5) which mutually obligated the company and the union to "comply with Executive Order 11246 and Title VII of the Civil Rights Act" of 1964.
 
 
 8
 In July 1978, the General Services Administration (GSA) determined that ARO's failure to post notices of vacancies in the guard unit and the failure to provide that the affected class members, as defined by the 1970 conciliation agreement, could transfer to the guard unit and maintain their plant seniority violated the Executive Order and the 1970 conciliation agreement.
 
 
 9
 As a result of a compliance review, ARO began posting guard vacancy notices in July 1978. B.D. Taylor, a black, qualified bidder for a guard vacancy posted on August 8, 1978, submitted an application. By virtue of his membership in the affected class, he was permitted by the company to maintain his plant seniority date. Taylor, a high school graduate and a veteran, had applied for employment on October 25, 1963. His actual date of hire as a janitor-cleaner was May 11, 1964. At that time, ARO determined that he was only qualified to be a janitor-cleaner.
 
 
 10
 On October 30, 1978, L.B. Cross, on behalf of Local 46, filed a grievance with ARO alleging that allowing Taylor to maintain his plant seniority date upon transfer into the guard unit was a violation of Article V of the collective bargaining agreement between ARO and Local 46. On November 8, 1978, ARO advised the union that the grievance would not be processed further and that the seniority relief was provided to Taylor pursuant to the company's legal obligations under Executive Order 11246.
 
 
 11
 On December 12, 1978, Freeze filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that the company's action in permitting Taylor to maintain his plant seniority violated Title VII. On March 21, 1979, the EEOC sent Freeze a Notice of Right to Sue (42 U.S.C. Sec. 2000e-5(F)(1). Freeze and Local 46 filed the instant suit.
 
 
 12
 The district court held that the conciliation agreements permitted the remedial plan adopted by ARO and further held that since Local 46 had entered into an agreement requiring it to comply with the requirements of Executive Order 11246, it was not necessary to require arbitration of the grievance.
 
 
 13
 Upon a consideration of the briefs, the record below and argument of counsel, we hold that it was not error for the district court to grant the motion for summary judgment. We conclude that the affirmative action plan, with its grant of retroactive seniority to an identified victim of racial discrimination was proper and is in conformity with principles enunciated in Franks v. Bowman Transportation Co., 424 U.S. 747 (1976) and Detroit Police Officers' Association v. Young, 608 F.2d 671 (6th Cir.1979). The senitority system's legitimacy is not at issue here. It does not form the basis for the admitted violations but rather is merely being impacted, for remedial purposes, by a plan adopted under a concilation agreement. Franks, supra.
 
 
 14
 We also agree with the district court that ARO was not required to engage in "the idle gesture of processing the grievance to arbitration" since Local 46 had agreed in the 1978 collective bargaining agreement to comply with Executive Order 11246. Article II, Section 5 of the agreement quite explicitly provides:
 
 Article II--Recognition
 
 15
 The Company and the Union agree to provide equal employment opportunity and affirmative action. The Company and the Union will comply with Executive Order 11246 and Title VII of the Civil Rights Act and will not discriminate against any employee or applicant for employment because of race, color, religion, national origin, sex, age or handicap in connection with employment, demotion, upgrading, promotion or transfer; recruitment or recruitment advertising; rates of pay or other forms of compensation; and lay-off or termination.
 
 
 16
 The district court's granting of the defendant's motion for summary judgment was not in error. There is no issue of material fact in dispute, New Jersey Life Company v. Getz, 622 F.2d 198 (6th Cir.1980), and there are no errors of law. Accordingly, the judgment of the district court is Affirmed.