IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Matter of the Trust of: LISA DAWN LEWIS, A Single Adult. | ) ) ) ) ) ) ) | No. 37972-8-III<br><br>UNPUBLISHED OPINION |

FEARING, J. — In this disjointed appeal, the grantor and beneficiary of a special

needs trust, Lisa Dawn Lewis, assigns error to the superior court's refusal to terminate the

trust or to revoke the transfer of an inheritance into the trust. Lewis and her attorney,

Douglas Schafer, also seek reversal of CR 11 sanctions against them. Because Lewis

approved of the creation of the trust and the transfer of assets to the trust, we affirm the

superior court's ruling with regard to the trust. We reverse the award of sanctions

because the award, contrary to law, was afforded witnesses rather than parties to the suit.

FACTS

The appeal surrounds the creation and administration of a trust for Lisa Dawn

Lewis. Lisa Lewis, born August 17, 1974, suffers from a severe form of cervical spinal

stenosis. The physical disability precludes most employment. Lisa Lewis' sister, Lana

Prinz, declares that Lewis has cognitive delays. Responding attorneys in this appeal, Paul

Ferman and Larry Hall, based on interactions with Lewis, also believe that Lewis possesses cognitive delays. Lewis denies any mental deficiencies. No court has ruled Lewis legally incapacitated.

Since her mother's death in 2007, Lisa Lewis has received social security disability insurance (SSDI), a benefit based on her father's work record, in the amount of $1,600 per month. Lewis manages these funds herself with the approval from the Social Security Administration (SSA). Because Lewis receives SSDI, she also receives Medicare benefits. Benefits received from SSDI and Medicare do not require that she have limited access to resources or a limited income.

According to Lana Prinz, Lisa Lewis has received Medicaid benefits, not to be confused with Medicare benefits, and food stamps for most of her adult life. As recently as January 29, 2018, Lewis acknowledged in an e-mail that she received Medicaid assistance. Medicaid is a needs-based benefit requiring the recipient to have limited income and resources. *See Wilson v. State*, 142 Wn.2d 40, 44, 10 P.3d 1061 (2000); *Stell v. Boulder County Department of Social Services*, 92 P.3d 910, 912 (Colo. 2004). Lewis understands that her Medicaid benefits pay the monthly premiums on her Medicare benefits.

On May 16, 2017, Lisa Lewis' father, Larry Low, died intestate. Lewis and her two older sisters, Lana Prinz and Lorraine Bayless, are the only surviving heirs. Lewis

2

anticipated an inheritance from her father's estate. After her father's death, Lewis became homeless.

On June 2, 2017, Lisa Lewis met with her sisters and two attorneys from the law firm, Hall & West, Larry Hall and Paul Ferman. Sister Lana Prinz, as administrator to Larry Low's estate, hired the attorneys for the estate. According to Lewis, Hall insisted that she establish a special needs trust and choose a trustee. Lewis avers that Hall told her that, if she did not create the trust, she would not receive her inheritance. Hall acknowledges that he told Lana Prinz, with Lewis present, that he did not believe Lewis competent to manage her own affairs. He denies, however, telling Lewis at any time that she must establish a trust in order to receive her distribution from the father's estate.

Larry Hall and Paul Ferman directed Lisa Lewis to meet John Tracy, a lawyer from a separate firm, for preparation of a trust. Tracy conferenced with both Lewis and her chosen trustee, Michael Torell, on July 25, 2017. Tracy described the nature of a special needs trust, and he told both that, in the preparation of the trust, he acted as the lawyer solely for Torell.

By early August 2017, John Tracy prepared a document that created an irrevocable special needs trust. The document declared that a trust was created "[b]y and through the Superior Court of Kitsap County," Lisa Lewis' home county. Clerk's Papers (CP) at 7. The document named Lewis as the grantor and beneficiary of the trust. The

3

instrument contained lines for the signatures of Lewis, her trustee, Michael Torell, the

superior court, and the attorney who created the trust document, John Tracy.

The trust document prepared by John Tracy stated that the trust was created to

receive gifts and inheritance benefiting Lisa Lewis. The document also purported to

comply with both federal and state benefits eligibility requirements. The document

declared:

> This Trust is created with the understanding that the Trust will allow LISA to preserve or obtain government benefits to which she is or may be entitled. *This Trust is being established to receive proceeds that LISA would otherwise receive directly by* gift, *inheritance,* or other source. This Trust is established for the sole benefit of LISA [Lewis], in accordance with the requirements of 42 U.S.C. 1382e(5), 42 U.S.C. Sec. 1396p(c)(2)(B)(iv) and WAC 182-513-1365(1)(e) & (4), so that the transfer of assets to the Trust shall not cause the imposition of a period of ineligibility for Supplemental Security Income (SSI) and Medicaid. Further, for purposes of SSI and Medicaid eligibility, the Trust corpus shall not be deemed a resource available to LISA because the Trust meets the requirements set forth at 42 U.S.C. 1382b(e), 42 U.S.C. Sec. 1396p(d)(4)(A), and WAC 182-516-0100(5)(a).

CP at 7 (emphasis added). The trust referenced property in the trust:

> **1.1 Trust Property:** The Grantor and the Kitsap County Superior Court hereby establish the Trust as an irrevocable Trust. The Grantor may assign to the Trustee all right, title, and interest in any property at any time, the receipt of which shall be acknowledged by the Trustee. . . .
> **1.2 Additional Property:** The Grantor has the right to add to the corpus of the Trust, and any property so added shall be held, administered and distributed as provided in this document. With the prior written consent of the Trustee, any other person may add to the corpus of the Trust.

CP at 7 (boldface and underlining in original). A Schedule A was attached to the trust instrument, but the schedule was blank. The body of the trust document did not mention any Schedule A.

Under the April 2017 trust language, the trustee may supplement care "over and above the benefits LISA [Lewis] otherwise might receive or is receiving as a result of need, or disability, from any local, state, or federal program . . . which might provide services or benefits to persons with disabilities or who are in financial need." CP at 9. The trust precluded the trustee from disbursing funds that would render Lewis ineligible for such benefits.

The trust document provided for termination of the trust in two circumstances. First, the trust would end at Lisa Lewis' death, in which case the trust document provided that the State of Washington would first receive a distribution for benefits paid as required under 42 U.S.C. Sec. 1396p(d)(4)(A), WAC 182-513-1365(1)(e)&(4), or other applicable federal or state law. Second, the trust provided for early termination in the event Lewis' disability ended. The trust document provided for no distribution to the State in the event of early termination.

On August 2, 2017, Lisa Lewis and her designated trustee, Michael Torell, signed the document. The notarized document states that Lewis signed the document of her own free will.

5

On August 4, 2017, attorney John Tracy gave notice to trustee Michael Torell and beneficiary Lisa Lewis that he planned to bring a motion for approval of the special needs trust in probate court on August 11, 2017. On August 11, 2017, the probate court entered an order approving Lisa Lewis' special needs trust. The court also signed the trust instrument. The following language appeared above the court's signature: "Established By and Through the Kitsap County Superior Court." CP at 13.

By late August 2017, Paul Ferman, attorney for the estate of Larry Low, learned that trustee Michael Torell had a felony conviction. The conviction disqualified Torell from serving as a trustee. Ferman urged Lisa Lewis to appoint a new trustee, but Lewis insisted that Torell remain as trustee. Larry Low's estate refused to release funds to the trust while Michael Torell served as trustee.

On March 22, 2018, Paul Ferman requested that Jenifer Mick, a certified professional guardian, succeed Michael Torell as trustee of Lisa Lewis' trust. At the request of Ferman, Carol Rainey, Mick's attorney, filed a petition to appoint Mick as successor trustee for Torell.

Carol Rainey served notice on Lisa Lewis and Michael Torell for an April 27, 2018 hearing on the removal of Michael Torell and the appointment of a successor trustee. At the hearing, Paul Ferman appeared on behalf of the estate of Larry Low. Carol Rainey appeared on behalf of proposed successor trustee, Jennifer Mick.

During the April 27 hearing, attorneys Paul Ferman and Carol Rainey explained to the court that Michael Torell had a felony conviction and he did not qualify to serve as a trustee. Rainey mentioned that Lisa Lewis would soon receive an inheritance and the inheritance should be protected in a trust. Ferman commented that a delay in appointing a successor trustee could further bleed trust funds. The trust was then advancing funds to provide hotel housing for Lewis, who was otherwise homeless. At the hearing, Lewis requested a continuance in order to obtain an attorney.

The trial court denied Lisa Lewis' request for a continuance because of Michael Torell's ineligibility to serve as a trustee. At the conclusion of the April 27, 2018 hearing, the superior court signed an order approving the appointment of a successor trustee and a restatement of the trust. The order discharged Michael Torell as trustee and appointed Jenifer Mick as successor trustee. The order also directed the court to sign a restatement of the trust but did not declare that another trust was created.

Also at the conclusion of the April 27, 2018 hearing, the superior court signed the Restatement of the Lisa Dawn Lewis Special Needs Trust upon Appointment of Successor Trustee. The opening to the trust restatement declares:

> THIS Trust was established by the Kitsap County Superior Court for LISA DAWN LEWIS (the "Grantor") by order entered in Kitsap County Cause No. 17-4-00646-6 on August 11, 2017 for the benefits of LISA DAWN LEWIS, hereinafter referred to as "LISA" or the "Beneficiary." MICHAEL WILLIAM TORELL was appointed Trustee initially, however he is not qualified to serve as Trustee and by order dated April 27, 2018 MR. TORELL was removed as Trustee and JENIFER MICK was

7

appointed Successor Trustee, hereinafter referred to as the "Trustee." This Restatement of the Trust was ordered by the Court to provide the necessary powers to JENIFER MICK, Trustee.

CP at 49. Otherwise the body of the restatement trust reads the same as the initial trust instrument. Schedule A, attached to the restatement of trust reads:

Inheritance from Estate of Larry Dean Low
Kitsap County Cause No. 17-4-00501-0

CP at 57. The body of the trust instrument does not reference a Schedule A. Lisa Lewis did not sign the restatement of trust.

On May 1, 2018, Lisa Lewis wrote to attorney Paul Ferman and asked for evidence of the special needs trust to forward to the Department of Health and Social Services (DSHS), who asked how she afforded to stay at a motel. Ferman e-mailed Lewis a copy of the trust instrument. Ferman informed Lewis that the estate of Larry Low would soon release funds to Jenifer Mick to place in the trust.

On May 23, 2018, Jenifer Mick, as successor trustee of Lisa Lewis' special needs trust, signed a Trust and Estate Dispute Resolution Act (TEDRA), 11.96A RCW, agreement in the settlement of Larry Low's estate. The agreement read that the estate would distribute Lewis' share of the estate directly to the trust. On May 31, 2018, Jaime S. Huff replaced Carol Rainey as Mick's attorney. On June 1, 2018, Mick, as trustee, received $60,949.70 from Lewis' father's estate, and Mick placed the funds in the trust.

Jenifer Mick, as trustee, frequently communicated with Lisa Lewis, largely by e-mail and text. Mick often received requests from Lewis for distributions from the trust. Lewis presented Mick bills to pay that included past due rent, vehicle impound fees, parking fines, fines for criminal violations, and payments to other creditors. Mick concluded that Lewis' SSI funds, not the trust, should pay these debts.

Trustee Jennifer Mick met Lisa Lewis in person when paying larger expenditures. CP 188. Mick supplied Lewis with Quicken printouts of her expenditures. Mick documented her communications with Lewis and expenditures for Lewis' needs and Mick's trustee fees.

On July 3, 2018, Jenifer Mick filed a petition for instructions from the court as to which bills the trust should pay for Lisa Lewis. In the petition, Mick remarked that Lewis failed to take advantage of state resources before seeking assistance from the trust. Mick sought instructions from the court on payment for unpaid tickets, for a car in which Lewis could live, and for temporary housing in motel rooms.

On July 13, 2018, the superior court ordered that the trust pay Lisa Lewis' past parking tickets and impound fees, but no future fines or fees. The court authorized the trust to purchase an automobile for Lewis, provided Lewis obtained her driver's license and insurance for the vehicle. Lewis, not the trust, would pay to maintain any car. Finally, the court approved of the trust tendering a deposit and the first months' rent on housing. The court prohibited use of trust funds for hotels.

In early 2019, Lisa Lewis retained attorney Douglas Schafer. On February 19, 2019, Schafer e-mailed attorney Paul Ferman inquiring as to facts relevant to the special needs trust of Lewis. In a responding e-mail, Ferman informed Schafer that Lewis created and the court approved the trust. Ferman explained that Lewis refused to cooperate with finding a replacement trustee. Ferman remarked that John Tracy represented Lewis when Tracy created the trust document. Ferman mentioned that Lewis sought trust distributions for temporary hotel housing, gas, and other expenses, which did not serve her best interests. Ferman added that Lewis' excessive spending confirmed the need for a trust. In Paul Ferman's e-mail response to Doug Schafer, Ferman suggested that Lisa Lewis gambled, took illicit drugs, and suffered a mental disability.

## PROCEDURE

We move to an extensive description of the motions on appeal. The extensive review of the procedural record enables us to determine what issues are before this court.

On May 2, 2019, Jenifer Mick filed a petition for the approval of her first trustee report and accounting from April 27, 2018 through March 31, 2019. The accounting erroneously labeled Mick as the guardian for Lisa Lewis, not as trustee of a trust.

Through counsel, Douglas Schafer, Lisa Lewis objected to Jenifer Mick's first annual accounting and filed a motion to terminate the trust. In the motion to terminate, Lewis took advantage of Jenifer Mick's mistaken classification of Mick's role as a guardian, rather than a trustee. Lewis contended that the superior court lacked personal

10

jurisdiction over her because she never received service of a summons or other type of

judicial process. Lewis, thus, asked the court to vacate all orders that authorized Mick to

administer the trust and manage her money. Lewis asked for the distribution of trust

funds to her. Lewis also asked that all fees paid from the trust to Mick and Mick's

attorney be reimbursed to Lewis. Finally, she requested attorney fees for Schafer, who

acted in a pro bono capacity.

In support of her motion to terminate the trust, Lisa Lewis filed a declaration in

which she declared her full legal capacity. Lewis acknowledged signing the trust

document, but insisted that she did not carefully read the document before signing. She

maintained that she signed the document because she trusted Michael Torell, her

appointed trustee. More importantly, Lewis denied authorizing her inheritance from her

father to be placed in the trust.

On May 10, 2019, the trial court conducted a hearing on trustee Jenifer Mick's

request for approval of her accounting and Lisa Lewis' motion to terminate the trust. The

court noted the lack of a response from Jenifer Mick to Lisa Lewis' motion to terminate.

Jaime Huff, attorney for Jenifer Mick, replied that Mick took no position as to the

termination or continuance of the trust. Huff added that Mick played no role in the

establishment of the trust. The superior court asked attorney Huff to identify the counsel

who should respond to Lewis' motion to terminate the trust. Huff named Paul Ferman,

11

Carol Rainey, and John Tracy. The court directed that Jaime Huff, Paul Ferman, Carol Rainey, and John Tracy all submit individual responses to Lisa Lewis' motion.

Thereafter John Tracy, the attorney who drafted Lisa Lewis' trust, filed a declaration that explained his role in preparing the special needs trust. Tracy stated that the estate refused to release funds to the trust while Michael Torell served as trustee. He explained that Lewis never opposed the special needs trust, and she acted of her own free will when signing the trust instrument. Tracy declared that he explained the nuances of a special needs trust to both Lewis and Torell.

Successor trustee Jenifer Mick submitted a declaration, in which she stated that Lisa Lewis, at the beginning of each month, asked for a distribution from the trust to pay for ordinary or inappropriate expenses. Therefore, Mick concluded that Lewis used her SSDI on unsuitable or unnecessary items. Mick declared that, when unsure of expenditures, she petitioned the court for instructions. Mick added that, as trustee, she attempted to protect the trust from people taking advantage of Lewis and from Lewis insisting on funds to replace multiple lost or stolen computers and phones.

Jaime Huff, attorney for Jenifer Mick, submitted a declaration that attached an e-mail from Kenneth Washington, a revenue agent with the Division of Finance and Financial Recovery of DSHS, which e-mail read that Lisa Lewis owed payment for past medical assistance in the sum of $41,902.50. Washington wrote that DSHS enjoyed a

lien for the amount owed and, if the trust terminated, DSHS could seize the trust funds to satisfy the lien.

In a second declaration, Jaime Huff attached, among other e-mails, an e-mail dated January 29, 2018 from Paul Ferman to Lisa Lewis, in which Ferman explained that, if she lost her Medicaid benefits, she would lose her electronic benefits transfer (EBT) card and health benefits. Ferman explained that, having a trustee to disburse funds would permit her to keep these benefits.

Trustee Jenifer Mick, through her counsel, Jaime Huff of Richmond & Richmond, also filed a memorandum in opposition to Lisa Lewis' motion to terminate the trust. Neither Mick nor Huff filed a motion for sanctions or requested sanctions against Lisa Lewis or her counsel, Douglas Schafer, in the memorandum. Carol Rainey, Jenifer Mick's former counsel, also did not file a motion seeking an award of sanctions.

The law firm of Hall & West filed a declaration of Larry Hall, a declaration of Paul Ferman, a memorandum in opposition to Lisa Lewis' motion to terminate the trust, and a motion for sanctions against Lewis and her counsel Douglas Schafer for the filing of a frivolous motion. The law firm sought sanctions for the time spent in responding to Lewis' motion.

In his declaration, Paul Ferman testified that any reference to a guardianship in earlier pleadings of trustee Jenifer Mick constituted a clerical error. Ferman asserted that Lisa Lewis suffered from an obvious cognitive disability and that she acted in a child-like

13

manner. He declared that Lewis' sisters informed him of Lewis' history of mental illness, drug abuse, and crime. Lewis also had many unpaid debts. Ferman stated that, based on Lewis' history and mounting debt, he sent Lewis to John Tracy to create a special needs trust.

In its memorandum of law, Hall & West wrote that Paul Ferman and Larry Hall expected that John Tracy would serve as Lewis' attorney. Ferman later learned that Tracy acted as the attorney for Michael Torell to ensure that Torell would fulfill his fiduciary role for the trust.

Also in Hall & West's memorandum of authorities in opposition to Lisa Lewis' motion to terminate the trust and in support of its motion for sanctions, the law firm acknowledged that the trust document did not explicitly mention the inheritance from the estate of Larry Low as the reason for the special needs trust or the asset to be placed in the trust. Nevertheless, according to the memorandum, the establishment of the trust after Low's death and the trust document's mention of creating the trust to receive proceeds from an inheritance confirmed the creation of the trust for the purpose of protecting Lisa Lewis' inheritance.

Lisa Lewis' sister, Lana Prinz, submitted a declaration. Prinz declared that Lewis continually asked her sisters for money after their father's death. She opined that Lewis needed a trustee to manage her inheritance.

Lisa Lewis filed a reply memorandum to the responses to her motion to terminate the trust. Lewis argued that attorneys Larry Hall and Paul Ferman erroneously believed her to suffer a disability, yet the two attorneys for her father's estate never asked the superior court to appoint her a guardian ad litem. She reiterated her full capacity to manage her affairs.

In her reply memorandum, Lisa Lewis renewed her arguments that the court lacked personal jurisdiction over her. Lewis also addressed the possibility that a Medicaid lien existed. She argued that the trust, if terminated, would be required to repay the state for past medical assistance only if the trust was properly created, which it was not. She contended that the law limited a state's ability to recover past medical benefits and that the DSHS claim for reimbursement would require further examination. She further maintained that, even if a Medicaid lien existed, DSHS could now attempt to seize trust money. She added, however, that she might possess defenses to collection or DSHS may compromise its claim. She speculated that DSHS might afford her a hardship waiver or permit her to use her inheritance to purchase an exempt asset. Lewis contended that Jennifer Mick failed in her duty as a trustee by failing to investigate whether Lewis received needs-based benefits and whether disbursements for food and shelter would affect Lewis' ability to acquire those benefits.

On June 17, 2019, the superior court entertained oral argument on Lisa Lewis' motion to the terminate trust. During the hearing, Lewis contended that the court never

obtained personal jurisdiction over her. Paul Ferman responded that Lewis, the trust

grantor, consented to a self-imposed special needs trust. Ferman argued that a person,

such as Lewis, who consents to and creates a trust and who obtains an order from the

court confirming the existence of the trust, cannot thereafter complain that the court

lacked personal jurisdiction over her and the trust. Ferman warned that termination of the

trust would harm Lewis. He added that sanctions should be imposed against Lewis'

counsel, Douglas Schafer, because his representation damaged his client's best interests.

During oral argument on June 17, trustee Jenifer Mick emphasized that Lisa Lewis

never claimed she signed the trust under duress. Mick contended that Lewis was on

Medicaid and Medicare, and she informed the court that Medicaid was needs-based and

required the State to look to Lewis' resources. Mick mentioned that a special needs trust

allows the beneficiary to continue to receive medical assistance from the government

despite the trust asset.

During the June 17 hearing, Carole Rainey, former attorney for Jenifer Mick,

commented that the special needs trust served Lisa Lewis' interests. Rainey added that,

after investigating the facts, Doug Schafer should have advised his client not to challenge

the trust.

Lisa Lewis, through counsel, responded that, in the context of guardianships, one

must first obtain jurisdiction over an alleged incapacitated person. Lewis then argued

that the record did not support that John Tracy explained the special needs trust to Lewis

or that she "carefully read" the trust document. Report of Proceedings (RP) (June 17,

2019) at 28. According to Lewis, she also lacked representation when signing the

instrument, and the trust document made no reference to her inheritance. Lewis insisted

that a state-funded Medicare program paid her modest premiums. She asserted that,

rather than investigating the source of the premium payment, trustee Jenifer Mick and her

attorneys assumed that Lewis received Medicaid and that she needed a trust. She

concluded by arguing that the law does not protect funds in a self-created special needs

from creditors.

In its oral ruling on June 17, 2019, the trial court rejected Lisa Lewis' contention

that the court lacked personal jurisdiction because Lisa Lewis signed and agreed to the

special needs trust. The court denied the motion to terminate the trust because Lewis

would immediately forfeit the funds in the trust to the government. The court then

entered an order approving the trustee's accounting and denying the motion to terminate.

At the end of the June 17 hearing, the superior court granted the requests for CR

11 sanctions. Counsel Jaime Huff inquired whether the court intended to impose fees

against Douglas Schafer or the trust. The following exchange occurred:

> THE COURT: Well, that's the Court's concern. I don't want all of
> it against the trust.
> MS. HUFF: It's significant.
> THE COURT: It's significant. I think your amount was $900.
> MS. HUFF: Well, that was just for the accounting, Your Honor.
> THE COURT: What's your most recent?

MS. HUFF: My most recent from January is $4,670.67. The bulk of that is responding to this.

THE COURT: All right. Let's go through those carefully. Your amount is $4,670.67?

MS. HUFF: $4,670.67. $959.97 is what I was originally requesting when we were going to ask the Court to approve the accounting. Everything else was in response to this motion.

THE COURT: Mr. Ferman, how much is yours?

MR. FERMAN: $4,013. That's everything from responding to Mr. Schafer originally to doing the memorandum and declarations and everything.

THE COURT: How much is Ms. Rainey's?

MS. RAINEY: $900, Your Honor.

RP (June 17, 2019) at 33-34.

The superior court asked about the amount in the trust to assist the court in deciding against whom to award sanctions. Douglas Schafer then stated:

Your Honor, if I could just comment. I volunteered for this because I thought there was a serious injustice being committed on her. If the Court is going to order me to pay significant fees, I'm going to have to appeal it. I simply have to. I'm just saying that's the real world we're in. I will appeal this.

RP (June 17, 2019) at 35. The court responded:

The Court's main concern is the corpus of the trust and what is in her best interests. *I'm not taking any remarks of threats. I don't appreciate them in that context.*

I'm concerned, if I award any fees too high, it will be detrimental to Ms. Lewis. That is my concern, not the legal ramifications. I'm also mindful that appeals are going to cost money. People will have to respond, depleting further assets of the trust.

My job as judge is to protect what little money she has left. I will award attorneys' fees against the trust, but they're going to be reduced. This is going to be over today. I don't want to continue to drain what limited money she has.

18

RP (June 17, 2019) at 35-36 (emphasis added).

The trial court awarded fees, under CR 11, at a reduced amount as follows: $2,000 to Hall & West, $2,000 to Jaime Huff, attorney for Jenifer Mick, and $900 to Carol Rainey, former attorney for Mick. The court ordered all sanctions be imposed against the special needs trust with the hope that litigation will cease as a result of withholding sanctions against Douglas Schafer. In its oral ruling, the trial court acknowledged that the reduced fees failed to compensate the responding attorneys for their work in opposing the motion to terminate the trust.

The superior court entered findings of fact in support of granting the motion for sanctions against Lisa Lewis' trust.

> 1. Petitioner filed its motion claiming lack of this Court's jurisdiction over a Special Needs Trust it established with the signatures and consent of Petitioner.
> 2. Said position has no basis in law. Ct. [The court] [f]inds no merit in this motion.
> . . . .
> 5. Petitioner's counsel was advised prior to filing that this position has no basis in law or fact.
> 6. Petitioner nonetheless filed her petition.
> 7. The relief sought by Petitioner's motion would be detrimental to Petitioner, and the mere filing of such Petition could impair Petitioner's claim to valuable benefits.
> 8. Petitioner's counsel was advised prior to filing his petition that the filing of the petition and the relief he sought could harm his client.

CP at 239-40.

On June 27, 2019, Jenifer Mick, through counsel Jaime Huff and Richmond & Richmond, moved for reconsideration and asked that the superior court impose sanctions against counsel for Lisa Lewis, Douglas Schafer, instead of the trust. Mick contended that the court should not tolerate the bullying of Schafer. Mick noted that the superior court's previous finding of fact showed that Schafer filed a motion with no basis in law or fact. Mick stated that, if the court imposed CR 11 sanctions against Schafer, counsel for Mick would seek fees from Schafer only in order to protect the trust corpus. Richmond & Richmond, the firm which represented Mick, also agreed to defend any appeal should one occur and to waive legal fees should this court reverse the award of sanctions against Schafer. The motion for reconsideration presumably sought a ruling imposing the fees awarded in favor of all three legal entities, Jaime Huff or Richmond & Richmond, Hall & West, and Carol Rainey, or at the least the fees incurred by Mick's current counsel, Richmond & Richmond.

In response to the motion for reconsideration, Douglas Schafer denied any bullying behavior. He stated that he merely politely informed the court that he would appeal an award of sanctions imposed against him personally, particularly since he worked pro bono for Lewis.

As an exhibit to her response to the motion for reconsideration, Lisa Lewis included an e-mail exchange between Douglas Shafer and Kenneth Washington, the revenue agent with DSHS. On July 10, 2019, Schafer, in his opening e-mail, asked

20

Washington for the basis of his opinion that the trust, should it terminate, must repay a Medicaid lien. Kenneth Washington responded that the State of Washington is the beneficiary of a special needs trust under federal and Washington law. He clarified, however, that, if no special needs trust existed, no law required the Medicaid lien be repaid. Nevertheless, if Lisa Lewis, at the time of a court declaration voiding the trust, possessed resources over the permitted limit, she would become ineligible for any Medicaid benefits.

The superior court granted the motion for reconsideration and ruled that Douglas Schafer would pay Carol Rainey's and Hall & West's fees under CR 11. The court maintained the reduced award of sanctions. Remarkably, the superior court did not amend the earlier order to permit trustee Jenifer Mick or her attorneys Jaime Huff and her law firm, Richmond & Richmond, recovery against Doug Schafer personally. Mick was the only party who filed the motion for reconsideration to impose fees against counsel Doug Schafer, but she benefited none by the motion. We assume that the previous judgment for $2,000 in favor of Jaime Huff against Lisa Lewis remained valid after the reconsideration ruling.

In her notice of appeal, Lisa Lewis writes:

> The names and addresses of counsel for ***parties*** in this proceeding
> are:
> Douglas A. Schafer (attorney for Lisa Dawn Lewis)
> Schafer Law Firm
> . . . .

> Jamie S. Huff (attorney for Trustee Jenifer Mick)
> Richmond & Richmond, Ltd.
> . . . .
>
> The following *non-party friend of the court* lawyers filed
> declarations of facts and memoranda of legal arguments, and in orders
> being appealed were awarded fees by the court for doing so:
>
> Carol Horan Rainey (former attorney for Trustee Jenifer Mick)
> . . . .
>
> Lawrence R. Hall (attorney for the administrator of the probate
> estate of Ms. Lewis' father)
> Hall & West, P.S.
> . . . .
>
> J. Paul Ferman (attorney for the administrator of the probate estate
> of Ms. Lewis' father)
> Hall & West, P.S.

CP at 290 (some italics added).

Trustee Jenifer Mick filed a notice of cross-appeal. The cross-appeal seeks to

increase the award of sanctions to pay all attorneys for the full amount of work performed

in responding to Lisa Lewis' motion to terminate the trust. Mick's notice partially reads:

> COMES NOW the Trustee, by and through their attorneys,
> RICHMOND & RICHMOND, Ltd., and hereby seeks review of the Ruling
> entered on June 17, 2019, and reconsidered on August 15, 2019.

CP at 299.

The appeal brief written by Richmond & Richmond, as attorneys for Jenifer Mick,

lists Mick, Carol Rainey, and Hall & West as respondents. In the body of her brief,

Jenifer Mick argues that Paul Ferman, an attorney with Hall & West, and Carol Rainey were parties for purposes of an award of attorney fees under CR 11.  Mick does not argue that she was a party, nor does she ask that fees she incurred before the superior court be awarded against Douglas Schafer.  In Lisa Lewis' brief, Lewis only argues against fees being awarded to Carol Rainey and Hall & West, not in support of a reversal of the award of fees for Jaime Huff and Richmond & Richmond, Mick's current counsel.

LAW AND ANALYSIS

Lisa Lewis appeals the trial court's order approving Jenifer Mick's accounting, the order denying the motion to terminate Lewis' trust, and the order granting CR 11 sanctions against the trust and Douglas Schafer.  She further argues that the trial court abused its discretion when it held that Lewis and Douglas Schafer violated CR 11.

Termination of Trust

In seeking to terminate the trust, Lisa Lewis argues that the superior court lacked jurisdiction over her, that she signed the initial trust document under coercion or duress, that she should have been afforded counsel before signing the trust instrument, that she should have been appointed a guardian ad litem before signing the trust document, and that the trust was not needed to shield Lewis' assets from the government despite Lewis receiving government benefits.  We address these contentions in such order.

Lisa Lewis argues that the superior court lacked personal jurisdiction over her when the court purportedly ordered, on April 27, 2018, that her inheritance from her

23

father's estate would fund her special needs trust. Lewis contends that this superior court ruling directed the trustee, Jenifer Mick, to convert her property into the trust. Lewis highlights that she received no service of a summons, citation, or other judicial process which would provide the superior court the power to exercise personal jurisdiction over her in April 2018. Lewis does not contend that the superior court lacked personal jurisdiction over her when the court approved the special needs trust in August 2017.

We reject Lisa Lewis' contention because her argument assumes that that the April 27, 2018 order directed that the inheritance funds be placed in the trust. The order does not so read. The April 27 order approved the appointment of a successor trustee and a restatement of the trust. The order did not mention how to fund the already created special needs trust.

On April 27, 2018, the superior court also signed the restatement of trust, but the trust reads that the grantor, Lisa Lewis, holds the prerogative to assign property to the trust and allows third parties, with the consent of the trustee, to transfer property to the trust. The restatement references the inheritance in a Schedule A, but does not compel the funds to be placed in the special needs trust.

Lisa Lewis contends that, although no express order funded the trust, the trial court's approval of the restated trust document, with its appended and completed Schedule A, should be interpreted as such an order. She also argues that trustee Jenifer Mick and her attorney, Carol Rainey, surreptitiously and fraudulently changed the

language of the trust by inserting, on Schedule A, the inheritance due from Larry Low's estate. In a declaration, she avers that she never signed a document that assigned the trust her inheritance rights.

Based on the language of the initial trust, we reject Lisa Lewis' argument. The trust instrument declared that "[t]his Trust is being established to receive proceeds that LISA would otherwise receive directly by gift, *inheritance*, or other source." CP at 7 (Emphasis added). The only inheritance anticipated then by Lewis was the money from her father's estate. The primary, if sole, purpose of the special needs trust was to manage the inheritance and protect the funds from creditors. Lewis signed the trust document. Therefore, she consented to her inheritance being placed in the trust. The later restated trust and the attached Schedule A are irrelevant. Court approval of the placement of the inheritance funds into the trust was unnecessary. Service of any pleadings in April 2018 was also unnecessary, since Lisa Lewis already granted the trustee authority to accept the inheritance as a trust asset.

Lisa Lewis next contends that she was under duress at the time she signed the initial trust document. She argues that attorney Larry Hall coerced her into signing the trust document, and she underscores that she lacked her own legal counsel at the time of signing. Lewis emphasizes her declaration testimony, in which she states that "Mr. Hall told me that I needed to have a trust and to pick a trustee or else I would not get anything from the estate." CP at 113 (boldface and italics omitted).

25

Many facts contradict Lisa Lewis' assertion of coercion and duress. Lewis insists that she has full legal capacity and no cognitive impairment. Lana Prinz does not recall that an attorney, during the initial meeting between the sisters with Larry Hall and Paul Ferman, told Lewis that she must have a trust. Hall also denies stating that Lewis must have a trust. Even assuming Larry Hall told Lisa Lewis that she needed a trust in order to gain her inheritance, Hall could have been worried that the government might intercept the entirety or part of the inheritance if Lewis did not create a trust such that Lewis would not otherwise inherit the funds.

Going further, the interaction with Larry Hall took place on June 2, 2017, two months before the signing of the trust document. Lewis does not claim that the estate attorneys were present at John Tracy's office when, on July 25, 2017, Lewis, with her chosen trustee, Michael Torell, met Tracy to discuss the creation of a special needs trust. Lewis did not complain to Tracy that she acted under duress. Lewis signed the trust document on August 2, 2017.

Lisa Lewis also contends that, at her meeting with John Tracy, she did not carefully read the trust document. Further, Lewis states that she signed the document because she felt she could trust Michael Torell, her appointed trustee and good friend. She lacks a similar trust of successor trustee, Jenifer Mick. These additional arguments do not vitiate her signature on the trust. Lewis cites no law that suggests one can avoid the effects of a legal document by failing to read the document before signing.

We conclude, after a review of the pleadings, that Lisa Lewis did not sign the trust document under duress or coercion. By signing the agreement, Lisa Lewis consented to the transfer of her inheritance to the trust. We note that Lisa Lewis does not contend her pleadings raised a question of fact as to her signing freely and voluntarily. She does not argue that the superior court should have conducted an evidentiary hearing.

Lisa Lewis, based on *In re Marriage of Matson*, 107 Wn.2d 479, 730 P.2d 668 (1986) next suggests that Washington case law requires that a party retain independent counsel when signing a property agreement, before the court will enforce the agreement. *In re Marriage of Matson* concerned a prenuptial agreement, an agreement that demands extra protection for the parties because of the advantages that one party can take under the close marital relationship. A party to such an antenuptial agreement must know the full extent of the other party's assets and have the opportunity to obtain independent advice of his or her rights. The court's focus in such a case is on procedural fairness such that a spouse has the "opportunity, freely and intelligently, to waive [his or] her rights to a just and equitable division of property." *In re Marriage of Matson*, 107 Wn.2d at 487.

*Marriage of Matson* lacks relevance to Lisa Lewis' dispute. Lewis' request to terminate her trust involves no prenuptial agreement or a fair division of property. The property transferred to the trust was Lewis' inheritance. Lewis' only allegation relevant to the trust corpus is that she did not know the trust would receive the funds from her father's estate. The document, however, specifically reads that the trust would receive

27

proceeds from Lewis' inheritance. Lewis does not allege that John Tracy, the drafter of the trust instrument, acted in the best interest of trustee Michael Torell rather than Lewis. Tracy declared that he explained the nature of a special needs trust to both Torell and Lewis. He also informed Lewis that he represented former trustee Torell rather than Lewis. Lewis expressed her desire to have a special needs trust.

In her reply brief, Lisa Lewis suggests that the attorneys who wished for her to benefit from a trust should have afforded her the same protections afforded an alleged incompetent person before signing the initial trust document. For instance, a guardian ad litem should have been appointed her. Lewis emphasizes testimony of Hall that Lewis straddled the border of competency. Nevertheless, no court has declared Lewis to be incompetent. She insists that she is competent.

Both parties devote pages to contending whether Lisa Lewis' receipt of her inheritance outside of a trust would disqualify her for government benefits and whether, if the trust terminated, the government could seize former trust assets to reimburse itself for expenditures on behalf of Lewis. Lewis contends that neither is true, and, therefore, the reason behind creating the trust fails. Since that reason fails, the trust fails, according to Lewis.

We agree with Lisa Lewis that the principal purpose behind the trust was to shield her SSDI benefits and any Medicaid benefits she might receive. Nevertheless, the trust does not read that protecting receipt of government benefits is the sole objective behind

the trust. The facts show that others took advantage of Lewis and Lewis needed protection from creditors. The trust was needed regardless of whether the trust shielded the inheritance from the government. Those administering the estate of Larry Low and Lisa Lewis' sisters justifiably wanted to protect Lewis' inheritance from waste. Therefore, we decline to enter the confusing realm of government benefits law.

Trustee Accounting

Lisa Lewis next contends that the superior court erred in approving the trustee's report and accounting when granting the trustee's requested fees. Lewis submits four sentences of argument contending that Jenifer Mick failed to protect Lewis' interests when she wrongfully took control of Lewis' inheritance. Lewis argues that Mick failed to conduct an investigation as to whether Lewis received any needs-based benefits or whether she was entitled to such benefits. She argues that Mick maintained an unfounded belief that paying for Lewis' food or shelter would disqualify Lewis from receiving significant benefits. Therefore, Mick, when relying on this belief, failed to pay for needs not covered by governmental agencies as permitted by the trust document.

Trustee Jenifer Mick responds that Lisa Lewis fails to cite to legal authority or a factual basis for her claims. Further, Mick argues that the record supports that Lewis received needs-based benefits. She contends that Lewis fails to show what, if any, duty Mick violated as a fiduciary.

29

A party violates RAP 10.3(a)(6) when he or she fails to provide citation to legal authority in support of her argument. *Collins v. Clark County Fire District Number 5*, 155 Wn. App. 48, 95-96, 231 P.3d 1211 (2010). We need not consider arguments that are not developed in the briefs and for which a party has not cited authority. *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004).

We agree with Jenifer Mick that Lisa Lewis fails to cite legal authority in her argument. Lewis also fails to identify the legal duty Mick purportedly violated. Therefore, we reject this assignment of error.

## CR 11 Sanctions

Lisa Lewis forwards numerous contentions in support of her challenge and her counsel's challenge to the imposition of CR 11 sanctions in the form of reasonable attorney fees and costs granted to at least two of the three attorneys or law firms. Lewis contends that she did not submit a baseless motion to terminate the trust. She argues that neither opposing counsel nor the trial court provided notice that the motion to terminate would be subject to CR 11 sanctions. Finally, she posits that a trial court may grant a sanctions award under CR 11 to a party only, and, therefore, the trial court erred in awarding sanctions to Carol Rainey and the law firm Hall & West. We hold that, under CR 11, the superior court may not award fees to a nonparty witness, even one who is an attorney. Therefore, we do not address Lisa Lewis' other contentions.

Jenifer Mick appeals the superior court's denial of the full amount of fees incurred

by her and Hall & West.  Because we otherwise hold that Mick and Hall & West are not

entitled to any award of fees, we do not address Mick's cross-appeal.

CR 11(a) provides in relevant part:

> Every pleading, motion, and legal memorandum of a party
> represented by an attorney shall be dated and signed by at least one attorney
> of record in the attorney's individual name. . . .  The signature of a party or
> of an attorney constitutes a certificate by the party or attorney that the party
> or attorney has read the pleading, motion, or legal memorandum, and that
> to the best of the party's or attorney's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances:
> (1) it is well grounded in fact;
> (2) it is warranted by existing law or a good faith argument for the
> extension, modification, or reversal of existing law or the establishment of
> new law;
> (3) it is not interposed for any improper purpose, such as to harass or
> to cause unnecessary delay or needless increase in the cost of litigation.
> . . . .
> . . . If a pleading, motion, or legal memorandum is signed in
> violation of this rule, the court, upon motion or upon its own initiative, may
> impose upon the person who signed it, a represented party, or both, *an
> appropriate sanction, which may include an order to pay to the other party
> or parties* the amount of the reasonable expenses incurred because of the
> filing of the pleading, motion, or legal memorandum, including a
> reasonable attorney fee.

We observe that CR 11 does not expressly authorize an award of reasonable expenses

incurred by a witness, let alone an attorney witness.  The rule only mentions awarding a

"party" reasonable attorney fees and costs incurred in responding to frivolous pleadings.

Nevertheless, the rule does not limit itself to an award of reasonable attorney fees to

parties, but authorizes the court to impose any "appropriate sanction."  We must decide

whether an "appropriate sanction" includes the hourly fees charged by an attorney, when the attorney files a declaration and memorandum as a witness, not as counsel for a party.

No Washington case law directly answers the pending question. We could reasonably read CR 11 to support each of the conflicting positions presented on appeal. We base our decision on the prevailing, if not universal, view that a nonparty to a suit cannot recover costs or attorney fees in the pending litigation.

Three Washington decisions focus on the issue of awarding fees to a nonparty. In *W.J. Lake & Co. v. King County*, 4 Wn.2d 651, 104 P.2d 599 (1940), amicus curiae sought costs incurred for the printing of his brief, for his appearance fee paid in this court, and for the statutory attorney fee. The Washington Supreme Court denied the request. No statute expressly authorized amicus to recover costs or fees.

In *Roberts v. Bechtel*, 74 Wn. App. 685, 875 P.2d 14 (1994), the plaintiff in an earlier tort lawsuit brought a second action against the defendant in the first suit for filing a frivolous counterclaim in the first lawsuit. This court denied an award of attorney fees, under the frivolous litigation statute, RCW 4.84.185, because the plaintiff's insurance carrier paid the bills of the attorney who represented the plaintiff on the counterclaim. The insurance company was not a party to the second litigation.

In *G.W. Equipment Leasing, Inc. v. Mt. McKinley Fence Co.*, 97 Wn. App. 191, 982 P.2d 114 (1999), an attorney represented his spouse, himself, and a party not named in the litigation. He successfully defended the claim against his marital community. He

32

then sought an award of reasonable attorney fees under RCW 4.84.330, which mandates an award of reasonable attorney fees to the prevailing party when a contract or agreement so provides. Unfortunately for the attorney, however, he only requested fees as the attorney for the nonparty. The court noted that the attorney should have requested fees on his own behalf as the representative of his marital community. The court denied the request.

Ohio and Iowa courts follow the rule that costs are generally not recoverable by a person not a party to the litigation. *Rerat Law Firm v. Iowa District Court for Pottawattamie County*, 375 N.W.2d 226, 228 (Iowa 1985); *Dickinson v. Hot Mixed Bituminous Industry of Ohio*, 58 N.E.2d 78, 81 (Ohio Ct. App.1943). The court adopted the rule because persons cannot have the privilege of taking costs without having placed themselves in a position to be liable for their payment in case of a failure to succeed. *Rerat Law Firm v. Iowa District Court for Pottawattamie County*, 375 N.W.2d at 228; *Dickinson v. Hot Mixed Bituminous Industry of Ohio*, 58 N.E.2d at 81. The Iowa decision cited *W.J. Lake & Co. v. King County* in support of denying a nonparty costs.

In *Reeves v. Upson Regional Medical Center*, 315 Ga. App. 582, 726 S.E.2d 544 (2012), the court reviewed the Georgia statute that permitted the trial court to award reasonable attorney fees and costs in the event a lawyer or a party engages in frivolous litigation or misconduct. A party, who was served a subpoena for production of records, sought recovery of its fees under the statute. The Georgia court denied any award

because the party was not a party to the lawsuit. The statute did not expressly authorize an award to a nonparty, nor did it explicitly forbid it.

In *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 256, 245 P.3d 992 (2010), the Idaho high court reversed an award of attorney fees to an attorney for time worked after being disqualified as an attorney because of his being a witness. In *Eskind v. Harvey*, 20 Ga. App. 412, 93 S.E. 39 (1917), the court reversed the trial court's award of costs to a nonparty. In *Brentlinger v. Funk*, 26 Ky. 656 (1830), the court held that costs are not properly taxable against a person not a party to the record.

In a footnote, Jenifer Mick also contends RCW 11.96A.150, a section of the Trust and Estate Dispute Resolution Act, authorizes the superior court to award witnesses reasonable attorney fees and costs. The statute declares in part:

> (1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, *to be awarded to any party*: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.
> (2) This section applies to all proceedings governed by this title, including but not limited to proceedings involving trusts.

34

(Emphasis added.)  Mick argues that the omission of the phrase "to the proceedings" following the first reference to "party" in the statute indicates a legislative intent to permit an award of fees to one not a party to the TEDRA proceeding.

We question whether we should address an important argument raised by a party only in a footnote.  Nevertheless, we decline to entertain Jenifer Mick's request to affirm the superior court's award of fees to her under RCW 11.96A.150, because Mick never sought an award under the statute before the trial court.  This court may refuse to base a decision on a new theory advanced by a party on appeal.  *Bernal v. American Honda Motor Co.*, 87 Wn.2d 406, 414, 553 P.2d 107 (1976).

The superior court granted Jenifer Mick, Carol Rainey, and Hall & West attorney fees.  Presumably Jaime Huff and Richmond & Richmond, the current attorneys for Mick, are the beneficiaries of the fees awarded Jenifer Mick.  No party on appeal discusses whether any of the three were parties below or are parties on appeal.

We conclude that the lawyers Carol Rainey and Hall & West were not parties below nor are parties on appeal.  Also of importance, neither Rainey nor Hall & West filed an appeal brief.  Thus, neither contends that they are parties for purposes of an award of reasonable attorney fees and costs.

We recognize that Hall & West presented a legal memorandum to the superior court, but they primarily functioned as witnesses.  We question whether an attorney

witness should also be appearing as a lawyer in a case. We reverse the awards in favor of Carol Rainey and Hall & West.

Jenifer Mick argued, during the first hearing on the motion to terminate the trust, she was not a party to the dispute as to termination. She thereafter acted as a party and may be considered a party since she represents Lisa Lewis' special needs trust. On appeal, she acts as a party. In Lisa Lewis' appeal brief, Lewis lists Mick as a party.

Regardless of whether Jenifer Mick is a party to this legal proceeding, the superior court never awarded her or her current attorneys, Richmond & Richmond, fees against Douglas Schafer. The superior court awarded Jaime Huff, of Richmond & Richmond, $2,000 in fees against the trust. Lewis does not argue in her brief for a reversal of the fees in favor of Huff against her trust. Nevertheless, Richmond & Richmond agreed to waive any fees if this court reversed the award of sanctions. We take the law firm at its word and vacate the award against the trust.

### Attorney Fees on Appeal

Both parties seek an award of reasonable attorney fees and costs on appeal. Lisa Lewis requests fees under RCW 11.96.150, a section of the Trust and Estate Dispute Resolution Act, which grants this court discretion in awarding attorney fees. We previously quoted this statute. We deny Lewis' request because she loses on her request to terminate the trust and because we affirm Jenifer Mick's accounting.

Jenifer Mick argues that she is entitled to fees under CR 11 because Lisa Lewis

has brought a frivolous appeal. RAP 18.1 allows this court to grant a party fees because

of a frivolous appeal. Mick asks that any award of sanctions be entered against Douglas

Schafer rather than the special needs trust. She contends that, as counsel for Lewis,

Schafer had the duty to look to the applicable law and determine whether his client's

requested remedy would benefit the client. She contends that Schafer's actions harmed

Lewis.

In determining whether an appeal is frivolous, justifying the imposition of terms,

we are guided by the following considerations: (1) a civil appellant has a right to appeal

under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in

favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that

is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is

frivolous if there are no debatable issues upon which reasonable minds might differ, and

it is so totally devoid of merit that there was no reasonable possibility of reversal. *Tiffany*

*Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005), *abrogated*

*in part by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). In assessing the

frivolity of an appeal, we must determine the appeal to be frivolous as a whole, not

whether one issue or assignment of error is frivolous. *In re Marriage of Lee*, 176 Wn.

App. 678, 693, 310 P.3d 845 (2013).

We agree with Lisa Lewis' argument that witnesses cannot be awarded sanctions under CR 11. Therefore, the appeal is not frivolous. We award no fees on appeal against Douglas Schafer.

Alternatively, Jennifer Mick asks for an award of fees under RCW 11.96A.150. We would have awarded Mick fees from the trust estate, but her counsel agreed to waive any fees if this court reversed the award of sanctions.

CONCLUSIONS

We affirm the superior court's denial of Lisa Lewis' motion to terminate her special needs trust and the court's approval of trustee Jenifer Mick's accounting. We reverse all awards of fees in favor of Jaime Huff and Richmond & Richmond, Hall & West, and Carol Rainey. We deny all parties an award of fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____        _____
Siddoway, A.C.J.                      Lawrence-Berrey, J.

38